

**DAN MORALES**
ATTORNEY GENERAL

# Office of the Attorney General
## State of Texas

February 28, 1991

Honorable Robert A. Eckels
Chairman
Committee on County Affairs
Texas House of Representatives
P. O. Box 2910
Austin, Texas   78768-2910

Opinion No.   DM-8

Re:   Duty of Teacher Retirement System to compute the adjusted statewide average maintenance and operations tax rate pursuant to section 825.405(h) of the Government Code     (RQ-2162)

Dear Representative Eckels:

Your predecessor as chairman of the House Committee on County Affairs asked about the adjustment of the statewide average school maintenance and operations tax rate required by section 825.405(h) of the Government Code. That section requires that the statewide average maintenance and operations tax rate for school districts be adjusted by 125 percent for the purpose of determining a local school district's liability for the state contribution to the teachers' retirement fund. The specific question raised was whether the Teachers Retirement System (hereinafter TRS) is authorized to compute the adjustment of the statewide average tax rate to the fourth decimal place for the purpose of determining that liability instead of to the second decimal place.

The retirement system is supported by contributions from the state in addition to payments by its members. Gov't Code §§ 825.402, 825.403, 825.404; see also Attorney General Opinion JM-429 (1986). Subsection (a) of section 825.405 requires that the employing district pay the state contribution on a portion of the salary of certain members. Subsection (h) provides an exception to that general requirement, as follows:

> This section does not apply to state contributions for members employed by a school district in a school year if the district's tax rate for maintenance and operation revenues for the tax year that ended in the preceding school year equals or exceeds 125 percent of the statewide average tax rate for school district maintenance and operation revenues for that tax year. For a tax year, the statewide average tax rate for school district maintenance and operation revenues is the tax rate that, if applied to the statewide total appraised value of taxable property for every school district in the state according to the appraisal roll certified for each district

for the tax year as provided by Section 26.01, Tax Code, would produce an amount equal to the statewide total amount of maintenance and operation taxes imposed in the tax year for every school district in the state.

Gov't Code § 825.405(h).

In other words, school districts whose maintenance and operations tax rates equal or exceed 125 percent of the statewide average are excepted from the subsection (a) requirement that the employer pay part of the state contribution. The section has the dual purpose of equalizing financial pressures on local school districts and putting "a cap on the state's obligation to contribute on behalf of certain members." Attorney General Opinion JM-429 (1986) at 1.

In order to qualify for the exception set out in subsection (h), a school district's maintenance and operations tax rate for the preceding school year must be equal to or greater than 125 percent of the statewide average. Thus, the TRS must calculate the adjustment of the statewide average to as many decimal places as necessary to accurately compare a local district's tax rate with the adjusted statewide average in order to determine whether the school district qualifies for the exception. Of course, the TRS may use its discretion to limit the number of decimal places in the adjusted statewide average, as long as the comparison of the adjusted average with each local district's rate does not improperly deny or grant the exception in violation of subsection (h).[1]

The request letter offers,[2] as an example, a situation in which a school district's tax rate is $1.05 per $100 of taxable property value. Certainly, if the adjustment of the statewide average were correctly calculated to be $1.05, that school district, with a tax rate equal to the adjusted average, would not be required to pay the state contribution. However, assuming that the correct calculation of the adjusted statewide average is 1.0513 for the school year, the school district's tax rate would be less than 125 percent of the

---

[1]   The Board of Trustees of the TRS has broad administrative powers relative to the administration of the retirement system, Tex. Const. art. XVI, § 67(a)(3) and Gov't Code § 825.101, and specific powers relative to section 825.405. Gov't Code § 825.405(c), (g). Those "broad administrative powers [are] to be exercised in accordance with a sound discretion and with a view to effectuating the purposes of the retirement act." Teacher Retirement Sys. v. Duckworth, 260 S.W.2d 632, 636 (Tex. Civ. App. -- Fort Worth 1953), aff'd, 264 S.W.2d 98 (Tex. 1954).

[2]   The request also states that section 26.012(9) of the Tax Code requires that the "effective maintenance and operations rate" be expressed in dollars and cents. That provision only provides the formula to be used by school districts to calculate their local maintenance and operations tax rates.

statewide average, and the local district would not qualify for the exception and would be liable for the state contribution. That example illustrates the necessity of carrying the calculation out far enough to meaningfully and accurately compare the tax rate of a local district with the adjusted statewide average in order to determine whether the local district pays the state contribution.

## S U M M A R Y

Section 825.405(h) of the Government Code requires the computation of the statewide average maintenance and operations tax rate for school districts and the adjustment of that average by 125 percent. The Teachers Retirement System must calculate the adjustment of the statewide average to as many decimal places as necessary to accurately compare that adjusted average with each school district's maintenance and operations tax rate.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

SUSAN GARRISON
Acting Chairman, Opinion Committee

Prepared by Celeste A. Baker
Assistant Attorney General